**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LAMAR BOSTON , ) | CASE NO. 4:15 CV 1701 |
| ) | |
| Plaintiff, ) | JUDGE JOHN R. ADAMS |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF OPINION |
| GARY MOHR, et al., ) | AND ORDER |
| ) | |
| Defendants. ) | |

*Pro se* Plaintiff Lamar Boston filed this action in the United States District Court for the Southern District of Ohio under 42 U.S.C. § 1983 against Ohio Department of Rehabilitation and Correction ("ODRC") Director Gary Mohr, Legal Services, Ohio State Penitentiary ("OSP") Warden Jay Forshey, OSP Employee Laura Gardner, OSP Deputy Warden Chairman Bracy, OSP Institutional Inspector Mark Thomas, OSP Lieutenant Debborah Drummond, OSP Shift Supervisor Glenn Brown, OSP Lieutenant Linda Bowen, OSP Corrections Officer Randell Kish, OSP Corrections Officer Traceye Titus, and Fox Laboratory for Chemical Munitions. In the Complaint, Plaintiff alleges he

was harassed and physically abused by corrections officers, and was injured by a defective canister of pepper spray. He seeks monetary damages and an order enjoining the Defendants from keeping him in Local Control.

The Southern District of Ohio conducted an initial review of Plaintiff's Complaint under 28 U.S.C. § 1915(e), and dismissed the claims against ODRC Director Gary Mohr, and Legal Services, the entity responsible for overseeing disciplinary proceedings, as barred by the Eleventh Amendment. The Ohio Southern District Court determined that the remaining claims were against Defendants located in the Northern District of Ohio and venue therefore was proper in the Northern District of Ohio. The case was transferred to this Court.

**I.      Background**

The incident in question occurred on February 13, 2015 at the Ohio State Penitentiary, which is Ohio's supermax prison. At the time of the incident, Plaintiff was in local control placement within that facility, having been designated to local control in December 2014 upon referral by Rules Infraction Board ("RIB") Hearing Officer Lieutenant Drummond. Plaintiff had received nine RIB convictions within a 90 day period, which prison personnel determined demonstrated a chronic inability to adjust to the general population, even in that restrictive environment.

Plaintiff claims that on the morning of February 13, 2015, Officers Kish and Titus were harassing him by banging on his door and asking him to uncover his window. He indicates he complied and Kish made a racially charged comment to him. He contends he began to yell but Titus cut him off, saying Plaintiff could complain but Plaintiff would have to come out of his cell sometime, and they would harass him one way or the other.

Lunch was delivered at 11:00 a.m. and at 11:30 a.m., Plaintiff put his hands in the cuff port which he contends is a signal for a Lieutenant to be summoned. Lieutenant Bowen arrived at his cell and Plaintiff advised her he did not feel safe. He asked to be moved to another location. She told him he was overreacting and to ignore the officers' taunts. He told her again he did not feel safe and refused to remove his hands from the cuff port. Bowen issued several direct orders to close the cuff port but Plaintiff refused. Bowen left the area to summon the shift supervisor, Captain Brown.

While she was gone, Plaintiff broke the outer cuff lexan, causing corrections officers to scramble to pick up the broken pieces. Plaintiff also broke the showerhead in his cell, believing he would be moved so that repairs could be made. Bowen returned with a negotiator who went to talk to Plaintiff. When negotiations failed, Bowen ordered Plaintiff to "cuff up." He refused. Bowen sprayed pepper spray into the cuff port and again ordered Plaintiff to "cuff up." Plaintiff again refused. Bowen gave a second blast of pepper spray into the port. Plaintiff then tried to use his body to block the port. Titus and Kish used a clearing device and Bowen gave a third blast of pepper spray into the port. Plaintiff still refused the directive to "cuff up." Bowen delivered a fourth burst of pepper spray upon which Plaintiff finally agreed to be handcuffed and removed from his cell.

Officers Titus and Kish escorted him to the leg iron bench and Plaintiff became aggressive toward them. He was secured on the floor and Officer Burns secured leg irons to Plaintiff. He was then taken to a receiving room "strip cage." During the walk to that unit, he became aggressive once more toward the officers, clamping down on the arm of one of the officers. He was asked to stop and Officer Karl administered another burst of pepper spray. Plaintiff's cell was then searched, and packed up. He possessed three books over the limit, one altered pair of pants and one altered sheet.

Plaintiff states that once he was in the receiving room, he noticed a severe burn on his right arm. He states he notified the officers present but he was not provided with medical treatment. In the response to his grievances, the Institutional Inspector indicates he refused treatment but Plaintiff denies this.

Plaintiff received a conduct report for physical resistence to a direct order, disobedience to a direct order, destruction or alteration of property, and possession of contraband. He was served with this report on February 17, 2015. He was found guilty at a Rules Infraction Board Hearing. He filed grievances pertaining to the incident and the grievances were denied.

Plaintiff claims he was subjected to cruel and unusual punishment and his right to due process was violated. He indicates Kish and Titus subjected him to cruel and unusual punishment by creating a situation that caused harm to him. He contends Brown and Bowen when advised of their duties, knowingly neglected to protect the integrity of the institution and to ensure his safety. He states Bracy and Thomas approved his placement in local control in December 2014, and refused to properly investigate the incident when ruling on his grievances. He asserts Forshey, Gardner, and Drummond denied him due process by placing him in Local Control. He claims a facility like OSP does not have general population but only maximum and supermaximum designations. Finally, he claims Fox Chemical Munitions violated his rights to health and safety by manufacturing and distributing defective products.

## II. Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to

dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

**III.    Analysis**

Plaintiff includes two basic claims in his Complaint. First he claims he was denied due process when he was placed in local control in December 2014. Second, he claims he was subjected to cruel and unusual punishment on February 13, 2015.

**A.    Due Process**

The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.) In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It does not prohibit every deprivation by the government of a person's life, liberty or property. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). Only those deprivations which are conducted without due process are subject to suit under 42 U.S.C. § 1983. *Id*.

Procedural due process does not require that the government refrain from making a choice to infringe upon a person's life, liberty, or property interest. It simply requires that the government provide "due process" before making such a decision. *Howard v. Grinage*, 82 F.3d 1343, 1349-1353 (6th Cir. 1996). The goal is to minimize the risk of erroneous deprivation, to assure fairness in the decision-making process, and to assure that the individual affected has a participatory role in the process. *Id*. Procedural due process requires that an individual be given the opportunity to be heard "in a meaningful manner." *See Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983). Many procedural due process claims are grounded on violations of state-created rights, or rights that do not enjoy constitutional standing. *See Id.* The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right is to prevent the arbitrary use of government power. *Howard*, 82 F.3d at 1349. Procedural due process claims do not consider the egregiousness of the deprivation itself, but only question whether the process accorded prior to the deprivation was constitutionally sufficient. *Howard*, 82 F.3d at 1350.

Although the existence of a protected liberty or property interest is the threshold determination, the focus of this inquiry centers on the process provided, rather than on the nature of the right.

Plaintiff claims he was sanctioned with placement in segregation and loss of property without due process. Prisoners have narrower liberty and property interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The question of what process is due is answered only if the inmate establishes a deprivation of a constitutionally protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, standing alone, confers no liberty or property interest in freedom from government action taken within the sentence imposed. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id*. at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.

Generally, unless the disciplinary action is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no liberty or property interest will be found in the case. *Sandin*, 515 U.S. at 484. Where good time credits are at stake, or where the conditions of confinement present an atypical or significant hardship in relation to ordinary prison life, due process requires only that a prisoner receive: 1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional

safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Further, some evidence must exist to support the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).

Plaintiff does not provide much information in his Complaint about the disciplinary hearings that preceded his placement in local control in December 2014. The local control decision indicates he had nine disciplinary convictions within a 90 day period within the supermax prison. He does not dispute the veracity of the factual allegations in the conduct reports, but claims he could not be placed in local control in a supermax prison because the prison already has restrictive confinement. Plaintiff received a hearing on local control and was permitted to appeal that decision. The Hearing Officer's decision was supported by some evidence that Plaintiff demonstrated a chronic inability to adjust to the General Population, and his procedural due process rights were not violated. Plaintiff's due process claims against Bracy, Thomas, Forshey, Gardner, and Drummond are dismissed.

### B. Eighth Amendment

Plaintiff also claims his Eighth Amendment rights were violated. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court remarked that "having stripped [inmates] of virtually every means of self-

protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id*. at 833. The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ... 'take reasonable measures to guarantee the safety of the inmates.' " *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, s*ee Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter,175* F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A Plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth

-9-

Amendment. *Id.* at 9. A Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff's first claim is against Kish and Titus. This claim fails to satisfy the objective criteria. He claims the two corrections officers harassed and taunted him, creating a situation where actions had to be taken to physical restrain him. Verbal abuse and offensive comments by prison guards, however, do not state an Eighth Amendment claim. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987).

Next, Plaintiff claims Brown and Bowen, when advised of the taunting and harassment, knowingly failed to ensure his safety by moving him to a different cell. This claim fails to meet the objective or subjective criteria. First, Plaintiff fails to allege facts to suggest that the taunts and harassment posed any significant risk of serious harm to him. Moreover, to satisfy the subjective component, Plaintiff is required to show these prison officials knew of, and acted with deliberate indifference to, his health or safety. *Wilson*, 501 U.S. at 302-03. Deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835. This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brown v. Bargery*, 207 F.3d 863, 867 (6th

Cir.2000)(quoting *Farmer*, 511 U.S. at 837). Plaintiff fails to allege facts to suggest either Brown or Bowen perceived a there was a serious risk of harm from the officers' taunts.

Plaintiff also alleges Bowen sprayed him four times with pepper spray. Corrections officers do not violate a prisoner's Eighth Amendment rights when they apply force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406-07 (6th Cir. 2014). *See Jennings v. Mitchell*, 93 Fed.Appx. 723, 725 (6th Cir. 2004)(finding no Eighth Amendment violation where a prisoner was sprayed with pepper spray after repeatedly disobeying orders to exit the shower. Indeed, in numerous other cases we have likewise concluded that "the use of ... chemical agents against recalcitrant prisoners" does not violate the Eighth Amendment. *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir.1992) (collecting cases). On the other hand, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Hudson v. McMillian*, 503 U.S. 1, 9, (1992). *See Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011)(finding that a prisoner stated a valid excessive-force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him.").

In this case, several attempts were made to defuse the situation before chemical agents were applied. Bowen issued several direct orders to close the cuff port but Plaintiff refused. Bowen left the area to summon the shift supervisor, Captain Brown. While she was gone, Plaintiff broke the outer cuff lexan, causing corrections officers to scramble to pick up the broken pieces, and also broke the showerhead in his cell. Bowen was notified and returned with a negotiator who went to talk to Plaintiff. When negotiations failed, Bowen ordered Plaintiff to "cuff up." He refused. Bowen

-11-

sprayed pepper spray into the cuff port and again ordered Plaintiff to "cuff up." Plaintiff again refused. Bowen gave a second blast of pepper spray into the port. Plaintiff then tried to use his body to block the port. Titus and Kish used a clearing device and Bowen gave a third blast of pepper spray into the port. Plaintiff still refused the directive to "cuff up." Bowen delivered a fourth burst of pepper spray upon which Plaintiff finally agreed to cuff and be removed from his cell. The facts as alleged do not suggest a force applied maliciously, or sadistically to cause harm but instead suggest a good faith effort to restore discipline. His excessive force claim is denied.

Plaintiff's Eighth Amendment claims against Bracy and Thomas are based on their responses to the grievances he filed as a result of this incident. Responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999).

### C. Claims against Fox Laboratory

Finally, Plaintiff asserts claims against Fox Laboratory. It is not clear from the Complaint what type of claim he is attempting to assert. To the extent Plaintiff is asserting an Eighth Amendment claim against his Defendant, the claim must be dismissed. To establish a *prima facie* case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. Fox Laboratory is a private party, not a government entity. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party

"acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). There is no suggestion in the Complaint that Fox Laboratory could be considered a state actor to support a civil rights claim under § 1983.

To the extent Plaintiff is attempting to bring a products liability claim against this Defendant, it would arise, if at all, under state tort law. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, may exercise discretion in hearing state law matters. *Id.* at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id.* As the federal law claims in this case were dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims against this Defendant.

Plaintiff lists Fox Laboratory as a Michigan company. Even if this is correct, and the company is not incorporated in Ohio, diversity jurisdiction still would not be established because the amount in controversy requirement was not met. Plaintiff states he is seeking $15,000 from Fox Laboratory in compensatory damages and $10,000.00 in punitive damages. His request for damages does not reach the jurisdictional limit.

### IV. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies,

pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

    IT IS SO ORDERED.


Date: November 30, 2015                        */s/ John R. Adams*
                                                JOHN R. ADAMS
                                                UNITED STATES DISTRICT JUDGE

---

[1] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.